Samuels, J.
A proper analysis of this case will show that it turns upon two questions:
First. Whether F. C. Stainback had the authority 0f j¡j_ stainback his principal, to draw the bill which is part of the foundation of this suit, or to subject his principal to an action on a collateral contract in regard thereto.
Second. If he had no such authority, is L. E. Stain-back still liable for the act of the agent, because of anything in the dealing between the agent and the plaintiffs ?
It may be laid down as a rule of law, sanctioned alike by reason and authority, that a power of attorney given to an agent, to act in the name and on behalf of his principal, in the absence of anything to show a different intention, must be construed as giving authority to act only in the separate, individual business of the principal. See Story on Agency, from § 57 to § 143; Atwood v. Munnings, 7 Barn. & Cress. 278; North River Bank v. Aymar, 3 Hill’s N. Y. R. 262; Stainer v. Tysen, 3 Hill’s N. Y. R. 262; Hewes v. Doddridge, 1 Rob. R. 143.
It is equally well settled that a party dealing with an agent acting under a written authority, must take notice of the extent and limits of that authority. He is to be regarded as dealing with the power before him; and he must at his peril, observe that the act done by the agent is legally identical with the act authorized by the power. See cases above cited; also 1 American Leading Cases 392, in notes.
These rules of law applied to the facts of the case, are decisive of the first question. The bill was not drawn in -the business of L. E. Stainback, but in that of F. C. Stainback exclusively. It was not identical with a bill drawn in the separate name of L. E. Stain-back. A joint bill imposes a joint liability on the *287 drawers in case it be not honored. In case of loss in the business in which the bill is drawn, both parties are bound; and in case one of the drawers be insolvent and the other solvent, as in this case, the whole loss must fall on the solvent party. If, however, a profit be made, it must be divided between those jointly concerned. A contract such as this is widely different from one in which the party liable for a loss, if one oeeur, is solely entitled to the profit, if one result.
Again: The power in any event must be held to authorize the agent to draw such bills only as L. E. Stainback might himself have rightfully drawn. In the case before us neither L. E. Stainback alone, or L. E. & F. C. Stainback jointly, had any right to draw the bill in question, having no funds in the hands of the drawees; and having, at the time, no other reason to suppose it would be accepted. The drawer of a bill, when he negotiates it, is to be understood as affirming that he has the right to draw. In the case before us L. E. Stainback is made to falsely affirm such ¡right; to commit a fraud by means of the falsehood; and all this under color of the authority conferred by him. Under certain circumstances a principal may be •bound by the act of his attorney going beyond his power, yet he can be so bound only to an innocent holder for value. Read and company are not holders at all; they knew perfectly well that L. E. Stainback, either solely or jointly with another, had no right to draw on them; that a power to draw bills rightfully, would not extend to their house, in the then state of business relations between them and the drawers, or either of them.
The letter of attorney authorized the agent to do certain specified acts, including the drawing of bills; this, as already stated, is to be construed as applying to the rightful drawing of bills in the business of the *288 principal. Within these limits the agent had authority to pledge the credit of his principal, and subject him the consequent liability. Yet in the case before us the defendant is sued not upon a direct undertaking as drawer, nor upon a liability incident to his position on the bill; he is sued upon an alleged contract to transpose the positions of the drawers and acceptors, to make the drawers liable to'the acceptors : And all this is said to be implied in the drawing the bill under the circumstances existing at the time. It cannot be held that an agent may, by implied contract, bind his principal beyond those limits within which he might bind him by express contract; nor can it be held that a power to draw a bill, in itself gives the further power to make another original and express contract to indemnify the acceptor against his acceptance. If the attorney could not make an express contract of indemnity, it is impossible to suppose that it can be implied from his drawing the bill.
The second question has, to some extent, been anticipated in considering the first. There are, however, certain considerations peculiar to this branch of the case, which require some notice. It is well settled that although an agent may in fact exceed his power, yet if he apparently keep' within its limits, and deal with innocent parties for value, the principal will be bound. Mann v. King, 6 Munf. 428; North River Bank v. Aymar, 3 Hill’s N. Y. R. 262. It is but j ust 'that the principal should suffer the consequences of his own misplaced confidence, rather than they should fall on innocent parties. This rule of law, however well established, can afford no aid to Read & Co. upon the facts of this case. They dealt with an agent acting under a power of attorney, and, as already said, must be regarded as dealing with that power before them. They were bound, at their peril, to notice the limits prescribed therein, either by its own terms, or *289 by construction of law. With this knowledge, they nevertheless make a contract, which is not one of those specified in the power; but an original contract to subject the drawers to a liability not incident to their position on the paper. They accepted the bill, having no funds of the drawers; they knew that their acceptance would make them liable to any subsequent holder for value; they relied upon the undertaking of F. C. Stainback for indemnity; this undertaking is contained in the letter dated December 15th, 1842, the day the bill was discounted, advising the drawees of the bill and its discount, and promising “to take care of it;” obviously meaning thereby to provide funds for its payment at maturity. This undertaking is contained in a letter from F. C. Stainback to Read & Co. given in evidence upon the trial. The letter is signed by F. C. Stainback with his own name only; is wholly upon his own business with them ; and must be held to be an express guarantee by F. C. Stainback alone. This excludes all possibility of an implied guarantee by L. E. Stainback, either joint or several.
The law, as here declared, required that the first and fourth instructions should have been given; and seeing that by necessary legal intendment Read & Co. did know the limits of the attorney’s power, and that in making the contract sued on he was exceeding his authority, there was no foundation in the facts of the ease for the qualification with which-the second and third instructions were given. The court, therefore, erred in annexing such qualification.
I am of opinion to reverse the judgment of the Circuit court, and remand the cause for a new trial, with directions to give the four instructions as moved for, if the evidence on the new trial shall be substantially the same as on the former trial, and if the instructions shall be again asked for.
*290 Allen and Daniel, Js. concurred.
Moncure and Lee, Js. dissented.
The judgment was as follows:
It seems to the court here, that the power of attorney from Littleberry E. Stainback to F. C. Stainback, given in evidence on the trial in the court below, did not give authority to F. C. Stainback to draw the bill given in evidence, binding said L. E. Stainback as a joint drawer with F. O. Stainback; and that the Circuit court erred in refusing to give the first instruction moved for by the plaintiff in error.
■ It further seems to the court here, that the power of attorney, as between the principal and agent, gave no authority to the agent to draw the bill aforesaid for the accommodation of .the agent; and that parties dealing with the agent and having the means of knowing that the agent was exceeding his power in thus drawing the bill for his own benefit, cannot recover of the principal.
It further seems to .the court that the facts, that F. C. Stainback held the bill .and had it discounted for his own benefit; that he wrote the letter of December 15th, 1842, addressed to the defendants ; that they accepted, after receiving that letter, and charged their acceptance to F. C. Stainback; if believed by the jury, taken in connection with the written evidence, were sufficient to show that the defendants had the means of knowing that F. C. Stainback the agent, in procuring the acceptance of defendants, was procuring it for his own accommodation and not that of his principal ; and that the principal was not bound : that the court below should have so instructed the jury, and that it erred on plaintiff’s second motion to instruct.
It further seems to the court here, that the court *291 below erred in its action on tbe plaintiff’s third and fourth motions to instruct; that it should have given the instruction above stated as proper to be given on the second motion to instruct.
Therefore, it is considered by the court that the said judgment be reversed and annulled; that the plaintiff recover of the defendants his costs in this court expended; that the verdict of the jury be set aside, and the cause remanded for a new trial to be had therein; upon which trial, if the evidence, shall be the same in substance as that at the former trial, the Circuit court shall conform its action to the principles hereby declared.